IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHELLE DIANE WARDEN,
    Plaintiff,

vs.                                      No. 16-1389-JTM

NANCY A. BERRYHILL, Acting Commissioner
   of Social Security,
    Defendant.

MEMORANDUM AND ORDER

Michelle Warden filed for disability and disability insurance benefits, contending that she became disabled on March 31, 2011 due to coronary vasospasm. The claim was denied initially on October 24, 2013, and on reconsideration on March 19, 2014. Warden sought review of these decisions, and appeared at an evidentiary hearing conducted by Administrative Law Judge (ALJ) Edward Evans on January 14, 2015. Judge Evans determined that Warden's heart condition did not arise until after her last date of insured status.

The Commissioner determines whether an applicant is disabled under a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: she must show that she is not engaged in substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant

shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" in the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court will not reweigh the evidence. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004). Thus the court will not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Id*. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (applying *Zoltanski* in reviewing ALJ's social security decision).

This deferential review is limited to factual determinations; it does not apply to the Commisioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

Here, Warden's last date of insured status under the Social Security Act, and the date she contends she became disabled, was March 31, 2011. In the present appeal, Warden contends that the ALJ erred by determining that her impairment did not arise until after March 31, 2011. She supports her appeal by citing various portions of the medical record (Dkt. 8, at 3-6) as demonstrating the existence of a disability prior to the end of insured status.

The court finds that the ALJ's determination was supported by substantial evidence. The evidence shows that Warren began to receive treatment for coronary vasospasm after a coronary episode that occurred on May 20, 2011. At that time, she reported chest discomfort, elevated blood pressure, and nausea. An extensive cardiac examination produced no significant results. An x-ray and EKG were unremarkable, but a catheterization in August, 2011 noted some vasospasm in the left circumflex artery. Warden has submitted additional reports of chest pain since that time.

However, as the ALJ noted, all of this evidence demonstrates this condition arose after the end of plaintiff's insured status on March 31, 2011. The evidence before that time shows some history of hypertension, but no evidence of disability. When nurse practioner speaking with Warden in 2006 noted some evidence of hypertension, Warden was placed

3

on blood pressure medication. A consultation on February 28, 2007 noted that Warden had a history of hypertension, but that it "seems to be controlled" with medication. (Tr. 434). The examination indicated "regular rate and rhythm" as to Warden's heart beat, and most of the consultation was devoted to discussing the need to stop smoking and start exercising. (Tr. 435). Dr. Jason Williams told Warden that her "blood pressure is well-controlled." (*Id.*).

On December 18, 2009, Warden saw Dr. Tim McVay. She was "[w]ell appearing, well nourished in no distress." (Tr. 432). Dr. McVay noted, after the examination, that Warden's heart exhibited "no cardiomegaly or thrills; regular rate and rhythm, no murmur or gallop." (*Id.*) He prescribed continuing with Zestoretic for her hypertension.

A month later, Warden returned to Dr. McVay, and reported experiencing very low blood pressure and that "she is very tired and her arms feel heavy." (Tr. 429). Dr. McVay prescribed Lisinopril (5 mg) and encouraged her improve her diet. In a follow-up meeting in February, 2009, Warden reported that she had stopped taking Lisinopril because it was making her confused. Dr. McVay noted that "these symptoms are certainly strange for this medicine." (Tr. 428). He prescribed hydrochlorothiazide "because she has tolerated this well in the past." (*Id.*) Warden did not seek further treatment for hypertension prior to the end of her insured status.

There is simply no evidence in the medical record that Warden experienced any medically determinable impairment due to coronary vasospasm until after the end of her insured status on March 31, 2011. All of the medical records for the plaintiff prior to this

time confirm that she was successfully treated for hypertension several years before. The ALJ accordingly found that the record failed to demonstrate that Warden "had a medically determinable impairment prior to the date last insured, much less that her impairment was severe or debilitating in nature." (Tr. 15). The court has reviewed the entire medical record, and finds the ALJ did not err in concluding that the record did not establish any medically determinable impairment through plaintiff's date last insured.

IT IS ACCORDINGLY ORDERED this 14th day of February, 2018, that the plaintiff's appeal is denied and the decision of the Commissioner is affirmed.

                                                             s/ J. Thomas Marten
                                                      J. THOMAS MARTEN, JUDGE